WASS v. The CALIFORNIA. See Cases Nos. 2,312 and 2,313.

WASS (ROFF v.). See Cases Nos. 11,999 and 12,000.

WASSELL (DUPAS v.). See Case No. 4,182.

WASSELL (PIKE v.). See Case No. 11,164.

W. A. SUMNER. See Case No. 4,288.

WATAGA, The (DENNISON v.). See Case No. 3,799.

## Case No. 17,250.

### The WATCHFUL.

[Brown, Adm. 469.] [1]

District Court, E. D. Michigan.    Feb., 1874.

GENERAL AVERAGE—LOSS OF DECK LOAD.

Where by the bill of lading it is agreed that a portion of the cargo shall be carried on deck, the vessel must contribute for the loss of the deck load by jettison.

[Cited in The May & Eva, 6 Fed. 629; The John H. Cannon, 51 Fed. 47.]

On exceptions to the libel of the Frankfort Iron Company for general average. October 23d, 1871, libellant shipped on board the schooner Watchful, at Frankfort, Michigan, 160 tons of iron ore for Detroit. By the bill of lading it was provided that twenty-five tons of the ore should be carried on the deck. The schooner proceeded on her voyage with twenty-five tons of ore stowed on deck accordingly, and when on Lake Huron, off Saginaw Bay, she encountered a storm, on account of which she was obliged to throw the deck load overboard for the safety of the vessel, and the same was wholly lost. The schooner arrived at Detroit in safety, and the balance of the ore was delivered to the consignee and the freight paid. There is no question but that the jettison was necessary, nor but that the loss of the ore, under the circumstances, would constitute a claim for general average, but for the fact that it was stowed on deck.

Mr. John Atkinson, for the exceptions.

The libel seeks to hold the vessel on two grounds: First, that by the custom of her trade; and, second, by express agreement in the bill of lading, it was provided that the iron jettisoned should be carried on deck. Where an agreement is express and unambiguous, custom cannot be shown. The object of usage is to interpret the language of contracts, in the absence of express stipulations, or when the meaning is equivocal and obscure. 1 Greenl. Ev. § 292; 2 Bouv. Dict. 615; The Reeside [Case No. 11,657]. See, also, Taylor v. Briggs, 2 Car. & P. 525; Smith v. Wilson, 3 Barn. & Adol. 728; Hone v. Mutual Safety Ins. Co., 1 Sandf. (S. C.) 137; Ware v. Hayward Rubber Co., 3 Allen, 84; Symonds v. Lloyd, 6 C. B. (N. S.) 691; Winn v. Chamberlin, 32 Vt. 318; The Milwaukee Belle [Case No. 9,627]; Sayward v. Stevens, 3 Gray, 103. If these cases are law, the libellant is remitted to its contract alone for relief. Under the English law, until the case of Gould v. Oliver, 4 Bing. N. C. 134, arose, it was a well recognized rule that no contribution could be had for goods carried on

[1] [Reported by Hon. Henry B. Brown, District Judge, and here reprinted by permission.]

deck by the owner's consent. Lown. Gen. Av. 45; 1 Pars. Mar. Law, 185, 307. The case of Lawrence v. Minturn, 17 How. [58 U. S.] 100, has no bearing upon the question in this case. Smith v. Wright, 1 Caines, 43, is directly in point. See, also, Dorsey v. Smith, 4 La. 211; Hampton v. The Thaddeus, 4 Mart. (La.) 582; Cram v. Aiken, 13 Me. 229; Sproat v. Donnell, 26 Me. 185. The Milwaukee Belle [supra] is decisive of the case at bar. In this case the contract was express, but no custom was proved. The doctrine upon which these cases rest seems to be that where the shipper consents to have his goods laden on deck, it is, of course, at reduced freights, in return for which he runs the risk of having his goods jettisoned without compensation. 3 Kent, Comm. 240; Lenox v. United Ins. Co., 3 Johns. Cas. 178; Dodge v. Bartol, 5 Greenl. 286. In the English cases, beside the custom to carry on deck, another custom was shown, that such goods were carried at the risk of the owner, and upon this evidence the more recent cases seem to have turned. Gould v. Oliver, 2 Man. & G. 208; Lown. Gen. Av. 42; Miller v. Tetherington, 6 Hurl. & N. 278; Johnson v. Chapman, 19 C. B. (N. S.) 563; Cory v. Robinson and Miller v. Chapple, cited in Lown. Gen. Av. 42.

H. B. Brown, contra.

The jettison of a deck load has been held to give no claim to contribution solely because of the ancient rule of the maritime law that goods shall not be carried on deck. 2 Pars. Mar. Ins. 218; Mar. Ord. of France, tit. 8, § 13. Wherever, by contract or custom, goods are carried on deck, the vessel must contribute for their loss. "Cessante ratione cessat ipsa lex." 2 Pars. Mar. Ins. 219, 221, 223, 224; Gould v. Oliver, 4 Bing. N. C. 134; Brown v. Cornwell, 1 Root, 60; Toledo Ins. Co. v. Speares, 16 Ind. 52; Millward v. Hibbert, 3 Q. B. 120; Dix. Av. 32; Dix. Ins. 87. The decision in Smith v. Wright, 1 Caines, 43, was placed upon the ground that there was a usage proven against the allowance of such average. If goods are stowed on deck without the consent of the shipper, and are lost, the vessel is liable for their full value. The Waldo [Case No. 17,056]. See 1 Pars. Shipp. 352. It is conceded that where goods are carried on deck under a contract between the master and shipper, this would not render the innocent owners of goods stowed in the hold liable to contribute for their loss unless a custom to carry on deck was proved, of which the owners of goods in the hold might be presumed to be cognizant. Some of the cases apparently against have taken this distinction. In Rogers v. Mechanics' Ins. Co. [Case No. 12,016], Judge Story held that blubber stowed on deck was not covered by insurance, but was to be contributed for. In the case of Lawrence v. Minturn, 17 How. [58 U. S.] 100, the supreme court expressly

disclaims any intention of passing upon the right of contribution. Page 115. The case of Johnson v. Chapman, 19 C. B. (N. S.) 563, is decisive of the point at issue. See, also, The Delaware, 14 Wall. [81 U. S.] 579, 598, 604; Harris v. Moody, 4 Bosw. 210; s. c., 30 N. Y. 266. The English and continental law is fully discussed in Lown. Gen. Av. 40–50, 28. Where by the custom of France small craft engaged in the coasting trade (petit cabotage) carry goods upon deck, they are contributed for in case of loss. Valin, Droit de la Marine, lib. 2, tit. 1, art. 12; Caumont Dictionnaire de Droit Maritime, 405, 728.

LONGYEAR, District Judge. It is an ancient and general rule that no portion of the cargo is allowed to be carried on deck, for the reason that it renders the ship more unmanageable in a storm, and involves a liability to be jettisoned, which would not exist if stowed under deck. By that rule, carrying cargo on deck is a fault on account of which, in case of loss by jettison, the vessel is liable, not for contribution or general average, but for the entire loss. 1 Pars. Shipp. & Adm. 352, and cases there cited. There are, however, exceptions to the rule, and it has been held not to apply, 1. Where, in a particular trade, or under certain circumstances, it is the custom to carry goods on deck. 2. When so carried by consent of the shipper. 3. In the case of steam vessels. Id. 352–359, and notes. In all these cases, it is said, the vessel is not liable for the entire loss, because the carrying of the goods on deck cannot be attributed as a fault, but if liable at all, it is for contribution, or general average merely. As to liability to contribution under the case first stated—that of carrying goods on deck according to usage—there has been much controversy in the courts and considerable contrariety of decision. I shall, however, pass this by for the present, for the reason that the case falls clearly within the second case stated, the ore having been carried on deck by the express consent and agreement of the master of the schooner and the libellant. As the Watchful was a sailing vessel, we have nothing to do with the third case stated. Being carried on deck was undoubtedly the cause of the necessity for the jettison; at least such is the presumption; and being so carried was no less a fault because by consent, as to all persons interested not parties or privies to the agreement. The vessel, and her owner and master, must however be held to be bound by the agreement, and as between them and the shipper the fault must be held to have been waived. As to them, therefore, the fact of the ore being carried on deck instead of under deck, must be held to be out of the question. Any other rule would make the shipper run the entire risk in a matter in regard to which the benefits are mutual, which would be unjust. The shipper, by his consent, waives all claim to entire compensation in case of the jettison of the goods. The master, by taking the goods

on board as freight, assumes for the vessel all the ordinary relations between ship and cargo, among which is the liability to contribution in case of loss by jettison. The only variation from the general rule wrought by the agreement of the shipper, that the goods may be carried on deck. is that, in case of loss by jettison, the vessel shall not be liable for the entire loss, a variation wholly in favor of the owners. Mr. Parsons, in his work on Shipping and Admiralty (volume 1, p. 357), says: "The owner of the ship of course knew that the goods were carried on deck. for we should say, on this point, that the knowledge of his master was his knowledge,"—citing The Paragon [Case No. 10,708]. and The Rebecca [Id. 11,619]; "and," he adds, "if it was not right to carry them there, the ship was as much in fault as the shipper, and we know not why the ship should not contribute for their loss. if saved by their jettison." And Mr. Lowndes, in his work on General Average, p. 43, in laying down and remarking upon the rule as established in England in the leading case of Gould v. Oliver, 4 Bing. N. C. 134, and 2 Man. & G. 208, says: "Whenever, as very generally was the case,. a provision for the carrying of a deck load is inserted in the charter party, the jettison of such deck load is replaced by a contribution between the shipowner and the owner of the deck load. This contribution is adjusted precisely in the same manner as a general average would be, but is called by a different name. It is called a 'general contribution.' Payment of 'general contribution' is enforced from no one who has not by express contract made himself a party to the stowage on deck. * * * The principle of these adjustments is that, as between assenting parties to such stowage, the deck must be taken to be a proper place for carrying cargo, and what is thrown from thence is to be treated as if it had been below deck; but as regards all parties who have not assented, the old rule remains in force, and for them there is no general average for deck-load jettison."

These views are peculiarly applicable to the present case, and they have my full concurrence. In Lawrence v. Minturn, 17 How. [58 U. S.] 100, the supreme court (page 114) cite approvingly the following from the opinion of the court in Gould v. Oliver, supra: "Now, when the loading on deck has taken place with the consent of the merchant, it is obvious that no remedy against the shipowner or master, for a wrongful loading of the goods on deck, can exist. The foreign authorities are, indeed, express on that point; and the general rule of the English law, that no one can maintain an action for a wrong, where he has consented or contributed to the act which occasions the loss, leads to the same conclusion." But at page 115 the court say: "His right to contribution is not involved in this case;" thus recognizing a distinction between the shipper's right to compensation for the entire loss, and his right to contribution in case of jettison of goods carried on deck by his consent, and that the determination of the former does not necessarily determine the latter under the same state of facts. And well may it be so, for, as before remarked, while it would be clearly unjust that the ship should bear the entire loss, where it occurs by the mutual fault of shipper and master, it would be equally unjust that the shipper should bear the entire loss under the same circumstances, the risk having been for the mutual benefit of both. In the one case no recovery can be had, because it must be based upon a mutual wrong. In the other it can be had because it is based upon a mutual risk for a mutual benefit. In the former the action is for a tort, and in its nature ex delicto. In the latter it is based upon the contract of affreightment, and is in its nature ex contractu. Dupont de Nemours v. Vance, 19 How. [60 U. S.] 168: Lown. Gen. Av. 43, 44; 2 Pars. Mar. Ins. 218, 224. In the case of The Milwaukee Belle [Case No. 9,627], the facts of which were very much like those of the present case, decided in the district court for Wisconsin, in 1870, the learned judge seemed to have lost sight of the foregoing distinctions, and he dismissed the libel on the authority of Lawrence v. Minturn, supra, giving for his principal reason. that the libellants, by knowingly shipping the goods on deck, had thereby consented "that the vessel might thereby be rendered less manageable, and more liable to labor in a storm." But the master was equally consenting. and, the sacrifice being for the salvation of the vessel, why should not that which was thus saved contribute to make up the loss thus made necessary by mutual consent?

Counsel on both sides in this case exhibited a commendable zeal in the preparation and argument of the question involved, and referred the court to and remarked upon a large number of authorities, ancient and modern, and in which nearly every phase of the general question of a shipper's right to general average. or contribution for loss by jettison of deck-load cargo. is discussed. The court has derived much aid from their able and enlightened presentation of the question. It is to be observed, however, that most of the authorities cited bear upon the right as based upon custom or locality, or both, and but very few of them upon the right as based upon express agreement, as in the present case. It would nevertheless have been a pleasure to trace those authorities down to the present time, and note how the courts have become gradually more and more liberal in their views, and disposed to decide each case upon its own peculiar merits, rather than by any rigid, unbending rule. But it would have been extending this opinion to an unwarrantable length, and was unnecessary to a decision of the present case. Exceptions overruled.